Below is an Opinion of the Court.

_____
TRISH M. BROWN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 14-31295-tmb13 |
| NICHOLAS LEE WATT and PATRICIA MOUDY WATT, | MEMORANDUM OPINION |
| Debtor(s). | |

This matter came before the court on August 28, 2014, for evidentiary hearings on Debtor's amended Chapter 13 Plan dated June 26, 2014, and a Motion for Relief from Stay (hereinafter "Motion for Relief") filed by the Bank of New York Mellon, fka The Bank of New York, as Trustee on behalf of the Holders of the Alternative Loan Trust 20-6-OA21, Mortgage Pass Through Certificates Series 2006-OA21 ("BONY Mellon"). Debtors were represented by Michael O'Brien. The Chapter 13 Trustee, Wayne Godare, was represented by Jordan Hantman. BONY Mellon was represented by Oren B. Haker. Meritage Homeowner's Association ("Meritage") was represented by Britta E. Warren.

In reaching my decision, I carefully reviewed the motions, documents in support thereof and opposition thereto, the pleadings, and other submissions in the file. I also read applicable legal authorities, both as cited to me and as located through my own research. I considered carefully the oral arguments presented and read counsels' submissions in detail. The following findings of fact and legal conclusions

Page 1 - MEMORANDUM OPINION

constitute the court's findings under Federal Rule of Civil Procedure ("FRCP") 52(a)[1], applicable in this proceeding under Federal Rules of Bankruptcy Procedure ("FRBP") 9014 and 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

Debtors filed a voluntary Chapter 13 petition on March 12, 2014. At the time of filing, the Debtors owned real property located at 56 B NW 33rd Place in Newport, Oregon ("Property"). The Property is located in a planned community and is subject to assessments issued by Meritage. Debtors' schedules show, at the time of filing, Meritage held a judgment lien against the Property in the amount of $179,733.00. Select Portfolio was scheduled as the servicer for the first mortgage holder on the Property.

Debtors' initial Chapter 13 plan dated March 26, 2014, (the "Initial Plan") provided for surrender of the Property. However, paragraph 12 of the Initial Plan further provided that Debtors would sell the Property and that:

> "Any claim of the Meritage Homeowners Association for post-petition assessments shall be satisfied in whole or in part through the Section 363 sale process and shall be primed to the first position lien only to the extent Meritage has satisfied the requirements of ORS 100.450. The Debtors will not make post-petition assessment payments to Meritage and their obligation to make such payments shall be terminated upon entry of an Order Confirming Plan subject only to further order of the Court pursuant to Fed. Rule Civ. Proc. 60(b)(3)." (Initial Plan at 4).

Meritage objected to confirmation of the Initial Plan on April 22, 2014, on the grounds that the Debtors were using paragraph 12 to discharge non-dischargeable post-petition obligations incident to the ownership of the Property.

Debtors' first amended plan ("First Amended Plan") was filed on April 23, 2014. Paragraph 12 of the First Amended Plan was identical to paragraph 12 of the Initial Plan and Meritage objected to its confirmation on the same grounds raised in its objection to the Initial Plan.

On June 17, 2014, while confirmation of Debtors' First Amended Plan was pending, BONY Mellon

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

Page 2 - MEMORANDUM OPINION

filed its Motion for Relief seeking an order granting relief and providing that its "claim will no longer be treated pursuant to 1322(b)(5); and thus, Fed. Rule Bank. P. 3002.1 shall no longer apply in the instant case." (Mot. for Relief at 3).

On June 30, 2014, Debtors filed a second amended plan dated June 26, 2014 ("Second Amended Plan"). The Second Amended Plan did not provide for sale of the Property or address post petition homeowner's association assessments. Rather, the Second Amended Plan provided, in paragraph 10:

> "Upon entry of an Order Confirming this Chapter 13 Plan, the property at 56 B NW 33rd Place in Newport, Oregon shall be vested in The Bank of New York Mellon fka The Bank of New York, as trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2006-OA21, Mortgage Pass-Through Certificates, Series 2006- OA21, its successors, transferees or assigns pursuant to 11 USC 1322(b)(9). This vesting shall include all of Debtors [sic] legal and equitable rights. This vesting shall not merge or otherwise affect the extent, validity, or priority of any liens on the property. Creditors potentially affected by this paragraph include: The Bank of New York Mellon aka Select Portfolio Servicing, the Bank of America, Lincoln County Tax Assessor and Meritage Homeowners Association." (Second Am. Plan at 5).

Although not specified in paragraph 2(b)(5) of the Second Amended Plan, it is clear that Debtors also intended to surrender the Property to BONY Mellon from Debtors' pleadings and counsel's argument.

On June 30, 2014, Debtors filed a response to BONY Mellon's Motion for Relief stating: "Amended Plan filed by Debtors seeks to vest title to the property in the name of Movant pursuant to 11 USC 1322(b)(9). [Debtors are] willing to execute such documents as are necessary and requested by Movant to perform such vesting." (Debtors' Resp. to Mot. for Relief at 2). Debtors argued that "[u]nless Movant consents to such treatment, [r]elief from stay should not be granted until that issue has been ruled upon." Id. On July 1, 2014, Meritage filed a response to BONY Mellon's Motion for Relief asking that "relief from stay be denied until issues related to vesting title, and the resulting liability for obligations under the CCRs and By-Laws, can be resolved through confirmation of the Second Amended Chapter 13 Plan." (Meritage's Resp. to Mot. for Relief at 4).

On July 31, 2014, BONY Mellon filed an objection to confirmation of Debtors' Second Amended Plan objecting to the vesting provision of paragraph 10. It contended that the court lacked the authority to compel it to accept title to the Property.

Page 3 - MEMORANDUM OPINION

On September 5, 2014, following the evidentiary hearing on these matters, the court entered an order granting BONY Mellon's Motion for Relief.

Debtors do not seek a ruling from the court regarding the relative priority or extent of the liens against the Property. The creditors affected by paragraph 10 of the Second Amended Plan include: (1) BONY-Mellon, (2) Bank of America, NA, (3) Lincoln County, Oregon Tax Assessor, and (4) Meritage. Debtors' counsel has received affirmative consent to this plan treatment from Lincoln County Tax Assessor and Meritage. No objection to the Second Amended Plan has been filed by Bank of America NA. BONY Mellon has the sole remaining objection.

## STIPULATED FACTS

The Debtors, BONY Mellon, and Meritage stipulated to many facts regarding the filing of the case, the relative priority of the liens on the Property, and the continuing obligations owing to BONY Mellon and Meritage. The parties also agreed that the value of the Property does not exceed the value of the liens and there is no equity for the bankruptcy estate. (J. Stip. Facts)

## LEGAL ANALYSIS

1. Burden of Proof.

"The Debtors have the burden of proof on each element of confirmation by a preponderance of the evidence." In re Lavilla, 425 B.R. 572, 576 (Bankr. E.D. Cal. 2010)(citations omitted).

2. Post-Petition Meritage HOA Assessments.

I previously held in an unrelated case, In re Anderson, Case No. 12-37458-tmb13, that:

> "[U]nder Oregon law a homeowner's duty to pay HOA assessment is not based on a prepetition contractual right, but rather is based on ownership of the property subject to the assessment. Accordingly, the debtor is obligated to pay those [post-petition] assessments for so long as she retains an ownership interest in the Property. In re Anderson, No. 12-37458-tmb13, Hr'g Tr. 23-14 , May 16, 2013.

3. Surrender and Ownership.

11 U.S.C. § 1325(a)(5)(C) provides that with respect to a secured claim, a plan may, among other things, surrender the property securing the claim to the holder of the claim. Here, the Debtors have vacated the Property and made it available to BONY Mellon. However, surrender merely establishes the Debtor will

Page 4 - MEMORANDUM OPINION

not oppose the transfer of the collateral. Absent some further action, such as foreclosure, deed in lieu of foreclosure or short sale of the property, surrender does not divest a debtor of ownership and its obligations. See In re Spencer, 457 B.R. 601 (E.D. Mich. 2011) and In re Anderson, No. 12-37458-tmb13, Hr'g Tr. 23-24.

The court is aware that, in this post-2007 world, debtors may find themselves in a position where lenders are reluctant to foreclose on their collateral, particularly where foreclosure would obligate the lender to pay homeowner association assessments that run with the property. As the court noted in Pigg v. BAC Home Loans Servicing LP (In re Pigg), 453 B.R. 728 (Bankr. M.D. Tenn. 2011)

> "Congress' broadening of section 523(a)(16), no doubt the result of some special interest lobbying, could not have foreseen the world and the United States financial crisis that crashed Wall Street, sunk the real estate market, and affected, to some degree, almost every American. With the real estate collapse, lenders who might otherwise have the right to do so, are choosing not to foreclose on their collateral leaving homeowners in limbo. In the case of a chapter 7 debtor who has surrendered her home in bankruptcy and been relieved of any personal liability on the mortgage, she cannot truly be given a fresh start because HOA fees are still accumulating until a lender chooses to foreclose. If the lender never forecloses, that homeowner's liability for the HOA fees continues in perpetuity." Pigg, 453 B.R. at 733.[2]

As in the Pigg case, the Debtors here are in limbo – surrender alone does not divest them of ownership. BONY Mellon will not accept a deed in lieu of foreclosure nor commit to foreclose even though it has relief from stay to do so. So long as the Debtors retain an ownership interest they remain liable for post-petition HOA assessments against the property. It is for this reason that Debtors seek confirmation of a plan which divests them of their interest in the Property.

---

[2] Unlike Oregon, several states accord super-priority status to HOA liens for common expenses which would have come due, in the absence of acceleration, during a set period of time prior to foreclosure. In some states, the super-priority is afforded only if the HOA forecloses its lien. See Nev. Rev. Stat 116.3116 (9 months), R.I. Gen. Laws § 34-36.1-3.16 (6 months), D.C. Code § 42-1903.13 (6 months), and Mass .Gen. Laws Ch. 183A (6 months). Other states afford super-priority to HOA assessments regardless of whether the HOA forecloses or a senior lien holder forecloses. See Colo. Rev. Stat. § 38.33.3-316 (6 months), and Conn. Gen. Stat. Ann. § 47-258 (9 months)

Page 5 - MEMORANDUM OPINION

4. Vesting Property Upon Confirmation.

Debtors argue that the plan provision vesting title to the Property in BONY Mellon is authorized by § 1322(b)(9) which states that a plan may "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." (Emphasis added). BONY Mellon disagrees. It concedes that § 1322(b)(9) does provide for vesting of property, upon confirmation, in a third party, but contends that such vesting may only occur with consent of the third party.

The parties cited two Chapter 13 cases in which debtors sought to compel a secured party to take title to property surrendered in a bankruptcy proceeding. In In re Rosa, 495 B.R. 522 (Bankr. D. Haw. 2013), the debtor proposed a plan which provided for surrender of her real property and that title to the Property would vest in the secured lender upon confirmation. The lender did not object to the plan. However, the chapter 13 trustee did so, arguing that the plan provision vesting title in the secured lender was improper. The debtor disagreed, arguing that the vesting provision of the plan was authorized by § 1322(b)(9). The bankruptcy court agreed with the debtor, stating:

> "It is true that 'surrender' does not transfer title to the property. But Congress spoke of 'vesting' not 'surrender,' in section 1322(b)(9). Under familiar rules of statutory interpretation, courts presume that, when Congress uses different words, it means different things. The plain meaning of 'vesting' includes a present transfer of ownership. Thus, section 1322(b)(9) permits inclusion of [the vesting provision]." Id. at 524.

However, the court concluded that a debtor's rights under § 1322(b)(9) were constrained by the requirements of § 1325(a)(5) regarding treatment of secured claims. Under this section, a plan may be confirmed only if, "with respect to each allowed secured claim provided for by the plan," the holder has accepted the plan, the debtor's payments to the creditor comply with certain standards and the creditor retains its lien, or the debtor surrenders the property securing the claim to the secured lender. 11 U.S.C. § 1325(a). In addressing the requirements of § 1325(a)(5), the court held:

> "The second permitted treatment—sometimes called 'cramdown'—does not apply to this plan. The third standard—surrender—does not fully validate this plan, because the debtor proposes vesting in addition to surrender. Therefore, the plan is confirmable only if the first standard—acceptance—is met." Id. at 524.

The lender in Rosa had not affirmatively accepted the plan. However, it had received adequate notice

Page 6 - MEMORANDUM OPINION

of the plan and failed to object to its confirmation. Id. at 524-525. The court, citing Andrews v. Loheit (In re Andrews), 49 F.3d 1404 (9th Cir. 1995) held that the secured creditor's failure to object constituted acceptance of the plan. Accordingly, the judge confirmed the plan over the trustee's objection. In re Rose, 512 B.R. 790 (Bankr. W.D.N.C. 2014) also addressed debtors' efforts to divest themself of ownership of surrendered property, albeit not through the process of plan confirmation. In Rose, the chapter 13 debtors sought permission via motion to "quitclaim" their residence to the secured lender, the SBA, without its consent. Rose, 512 at 792. The Roses' plan had provided for surrender of their residence to the SBA and relief from stay for it to foreclose. More than a year had passed since the chapter 13 plan had been confirmed and the SBA had neither foreclosed nor assumed control of the property. Id. at 793.

The Rose court denied the debtors' request to quitclaim the property to the SBA without its consent, stating "[a]s long as the secured creditor's actions do not 'constitute a subterfuge intended to coerce payment of a discharged debt,' the 'secured creditor ... has the prerogative to decide whether to accept or reject the surrendered collateral.'" Id. at 794 (citations omitted). While the court noted that at least two unpublished decisions in the Eastern District of North Carolina had "permitted Chapter 13 debtors to surrender property by quitclaim deed to a mortgage lender absent consent", they did "not identify a legal basis for their holdings" and were "of limited precedential value." Id.

Although the debtors in Rose had not sought to divest themselves of title to the surrendered property via an amended plan, the court nonetheless addressed the availability of that alternative. The Rose court noted the Rosa court's holding, but declined to adopt its interpretation of § 1322(b)(9). Rather, it concluded that a secured lender could not be compelled to accept title without its consent as "taking title by deed could impair a lender's rights in the collateral, subject it to ownership liabilities that it never would have voluntarily assumed and contravene state property law."

I respectfully disagree with both the Rose and the Rosa courts. Section 1322(b)(9) provides that the plan may "provide for vesting of the property of the estate on confirmation of a plan or at a later time in the debtor or in any other entity." (Emphasis added). "'It is an important rule of statutory construction that every word and clause in a statute be given effect.' United States v. Williams, 659 F3d. 1223, 1227-28 (9th Cir. 2011) cert

Page 7 - MEMORANDUM OPINION

denied, Williams v U.S. ____ U.S. ____, 132 S.Ct. 1951 (2012), (citing Hibbs v. Winn, 524 U.S. 88, 101, 124 S.Ct. 2276, 159 L. Ed. 2nd 172 (2004)('A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, or void or insignificant.') U.S. v Joseph, 716 F.3d 1273,1278 (9th Cir. 2013). Moreover, "[u]nder standard rules of statutory construction, we will not read into the statute a limitation that is not there." McDaniel v. Wells Fargo Investments, LLC, 717 F.3d 668, 677 (9th Cir. 2013) (citations omitted).

The Rosa and Rose courts both took the position that § 1322(b)(9) could not be used to compel a lender to accept title to its collateral without its consent. However, nothing in the language of § 1322(b)(9) requires such consent. In the absence of such language, I find that a plan which provides for vesting of property in a secured lender at time of confirmation may be confirmed over the lender's objection. However, such a plan must still comply with the provisions of section 1325(a)(5) with respect to payment of secured claims.

As noted, § 1325(a)(5) provides that, to be confirmable, a plan must either be 1) accepted by a holder of a secured claim, 2) provide for retention of the lender's lien and payments that meet the standards set forth in that section, or 3) surrender of the property. "These requirements are stated in the disjunctive, so the plan need only satisfy one of the three tests" to be confirmable. Rosa at 524. In Rosa, the court held that "the third standard - surrender- [did] not fully validate [the debtor's] plan, because the debtor propose[d] vesting in addition to surrender." Id. However, he failed to explain why the act of vesting eliminated surrender as a proper treatment of a secured claim. Nor do I see any reason why it would do so. See In re Gerardi, No. 1:10-bk-19028 (Bankr. D. Mass, July 24, 2014) (court overruled secured creditor's objection to a plan which provided that title to creditor's collateral would vest in it upon confirmation of the plan) and R.D. Moradi, *Dealing with Mortgage Owners Who Won't Foreclose — A Possible Bankruptcy Option*, Central District Insider, California Bankruptcy Court News, (August 5, 2014), http://centraldistrictinsider.com/2014/08/05 (The Rosa "court's decision . . . is not supported by the plain language of § 1325(a)(5), which deals only with the treatment of a secured creditors *claim*. The vesting provision under § 1322(b)(9) dealt with the property and should not have had any effect on whether the plan was confirmable with respect to the holder's secured claim by providing for surrender under § 1325(a)(5)(c))."

Page 8 - MEMORANDUM OPINION

Section § 1322(b)(9) permits confirmation of a plan which provides for vesting of property in a third party, such as a lien holder, without that party's consent. However, under § 1325(a)(3), the court may not confirm a plan unless it is proposed in good faith. Accordingly, confirmation could be denied if a debtor attempts to use § 1322(b)(9) to transfer property to a third party in order to relieve him or herself of responsibility for nuisance or environmental problems associated with it. In this case, there are no such concerns.

BONY Mellon resists taking title and surrender but yet seeks relief from the automatic stay to foreclose at an undeterminative date with no commitment to moving forward. BONY Mellon did not offer to waive its security and be treated as an unsecured creditor. It reminds me of the old adage of the dog in the manger. The dog cannot eat the hay but refuses to let the horse or the cow eat it either. BONY Mellon would rather sit on the hay. This creates a stalemate.

This hurts more than the Debtors who have ongoing HOA obligations they cannot afford and Meritage. It affects all the homeowners in Meritage. Under Oregon law:

> "**94.723 Common expenses; liability of first mortgagee.** If a first mortgagee acquires a lot in a planned community by foreclosure or deed in lieu of foreclosure, the mortgagee and subsequent purchaser shall not be liable for any of the common expenses chargeable to the lot which become due before the mortgagee or purchaser acquired title to the lot. <u>The unpaid expense shall be come a common expense of all lot owners including the mortgagee or purchaser</u>." (Emphasis added)

Thus, all unpaid assessments prior to BONY Mellon either foreclosing or acquiring title by some other means, are paid by all the other homeowners. Of course, lenders, including understandably, BONY Mellon, want to delay taking title to the Property for as long as possible. In the meantime, assessments continue to be unpaid. Certainly, the assessments are ongoing obligations of the Debtors, however, they cannot afford to pay them, leaving the other homeowners in Meritage to absorb those assessments.[3] Under the Second Amended Plan and ORS 94.723, BONY Mellon starts with a clean slate. If BONY Mellon acts promptly, it can sell the Property and incur little in the way of HOA assessments. Alternatively, it could work with Meritage on a rental agreement for the Property which would provide for payment of the obligations owed to

---

[3] The Debtors' schedules reveal that the majority of their household income is from retirement accounts, which would be exempt from execution if Meritage did seek to recover post-petition assessments.

Page 9 - MEMORANDUM OPINION

both, a win-win situation.

I also note that the Debtors carefully drafted paragraph 10 to make sure that Debtors were not altering the extent, priority, or validity of existing liens. This non merger language is important to preserve BONY Mellon's ability to complete a foreclosure post confirmation.

## CONCLUSION

I see no prohibitions to allowing the Debtors to both surrender the Property and vest it in BONY Mellon. Nor is there any indication that Debtors plan was filed in bad faith. Accordingly, I will confirm the Second Amended Plan over the objection of BONY Mellon. However, the Order Confirming Plan should amend the plan by interlineation to make clear that the Debtors are surrendering the Property and that entry of the Order has no effect on the relative priority or extent of the liens against the Property. Mr. O'Brien should submit an order confirming plan consistent with this ruling within 14 days.

###

cc: Michael O'Brien
Oren B. Haker
Britta E. Warren
Wayne Godare

Page 10 - MEMORANDUM OPINION